IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PENNEAST PIPELINE COMPANY, LLC,

        Plaintiff,

    v.

PERMANENT EASEMENT OF 0.06 ACRES IN
MOORE TOWNSHIP, NORTHAMPTON
COUNTY, PENNSYLVANIA, TAX PARCEL
NO. J5-3-3, et al,

        Defendants.

CIVIL ACTION
NO. 18-505

---

PENNEAST PIPELINE COMPANY, LLC,

        Plaintiff,

    v.

PERMANENT EASEMENT OF 0.98 ACRES
AND A TEMPORARY EASEMENT OF 1.61
ACRES IN LOWER NAZARETH TOWNSHIP,
NORTHAMPTON COUNTY, PENNSYLVANIA,
TAX PARCEL NO. L 7-6-10, et al,

        Defendants.

CIVIL ACTION
NO. 18-507

PENNEAST PIPELINE COMPANY, LLC,

    Plaintiff,

  v.

PERMANENT EASEMENT OF 0.75 ACRES
AND A TEMPORARY EASEMENT OF 1.01
ACRES IN LOWER SAUCON TOWNSHIP,
NORTHAMPTON COUNTY, PENNSYLVANIA,
TAX PARCEL NO. N8-14-9, et al,

    Defendants.

CIVIL ACTION
NO. 18-508

---

PENNEAST PIPELINE COMPANY, LLC,

    Plaintiff,

  v.

PERMANENT EASEMENT OF 0.33 ACRES
AND A TEMPORARY EASEMENT OF 0.68
ACRES IN LOWER NAZARETH TOWNSHIP,
NORTHAMPTON COUNTY, PENNSYLVANIA,
TAX PARCEL NO. K7-23-2, et al,

    Defendants.

CIVIL ACTION
NO. 18-510

PENNEAST PIPELINE COMPANY, LLC,

        Plaintiff,

    v.

PERMANENT EASEMENT OF 0.98 ACRES
AND TEMPORARY EASEMENT OF 1.45
ACRES IN MOORE TOWNSHIP,
NORTHAMPTON COUNTY, PENNSYLVANIA,
TAX PARCEL NO. H5-17-1, et al,

        Defendants.

CIVIL ACTION
NO. 18-518

---

PENNEAST PIPELINE COMPANY, LLC,

        Plaintiff,

    v.

PERMANENT EASEMENT OF 0.59 ACRES IN
BETHLEHEM TOWNSHIP, NORTHAMPTON
COUNTY, PENNSYLVANIA, TAX PARCEL
NO. N8-8-3, et al,

        Defendants.

CIVIL ACTION
NO. 18-524

| | |
|---|---|
| PENNEAST PIPELINE COMPANY, LLC, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 18-527 |
| PERMANENT EASEMENT OF 1.29 ACRES AND TEMPORARY EASEMENT OF 1.92 ACRES IN WILLIAMS TOWNSHIP, NORTHAMPTON COUNTY, PENNSYLVANIA, TAX PARCEL NO. P9-7-13, et al, | |
| Defendants. | |

| | |
|---|---|
| PENNEAST PIPELINE COMPANY, LLC, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 18-530 |
| PERMANENT EASEMENT OF 0.27 ACRES AND TEMPORARY EASEMENT OF 0.53 ACRES IN WILLIAMS TOWNSHIP, NORTHAMPTON COUNTY, PENNSYLVANIA, TAX PARCEL NO. P9-6-4A, et al, | |
| Defendants. | |

| | |
|---|---|
| PENNEAST PIPELINE COMPANY, LLC, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 18-532 |
| PERMANENT EASEMENT OF 2.88 ACRES AND TEMPORARY EASEMENT OF 3.80 ACRES IN WILLIAMS TOWNSHIP, NORTHAMPTON COUNTY, PENNSYLVANIA, TAX PARCEL NO. P9-12-30, et al, | |
| Defendants. | |

**MEMORANDUM OPINION**

**Schmehl, J. /s/ JLS**                                    **September 17, 2019**

## I.    **INTRODUCTION**

Plaintiff, PennEast Pipeline Company, LLC ("PennEast"), is involved in

a project to construct and operate a natural gas pipeline from northern Pennsylvania to

New Jersey, eastern and southern Pennsylvania and surrounding states. Before the Court

are the Motions for Partial Summary Judgment of PennEast in the nine above-captioned

cases. Defendant/landowners Jane Snyder, Lorraine C. Mineo, Bruce R. Petrie and

Ginger L. Petrie ("Petrie"), Marian M. Buskirk, City of Easton, Ned D. Heindel, Linda H.

Heindel, Alan D. Kirby, Jr., and Patricia Spaziani ("Heindel") and Ned. D. and Linda H.

Heindel Living Trust ("Heindel Trust") all filed oppositions to PennEast's Motions for

Partial Summary Judgment. In addition, Defendant/interest holders Northampton County

and Williams Township filed oppositions to the Motions. PennEast filed replies, and

argument was held on said motions.

For the following reasons, I find that PennEast has the substantive right to condemn

the properties in question and its Motions for Partial Summary Judgment are granted.

## II.    **LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine dispute as to any material

fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Proc.

56(c). "A motion for summary judgment will not be defeated by 'the mere existence' of

some disputed facts, but will be denied when there is a genuine issue of material fact."

*Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)). A fact is "material" if

5

proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (*citing Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

## III. FACTUAL BACKGROUND

On September 24, 2015, PennEast filed an application with the FERC for a Certificate Order for its Project to construct new pipeline facilities in Pennsylvania and New Jersey. (Compl. at ¶ 12.) The FERC evaluated the public need for the Project and completed a review of environmental impacts and operational considerations before issuing the FERC Order authorizing the Project. (*Id.*) Throughout the FERC certification process, the public was notified about the Project and was provided with the opportunity to participate in the FERC's administrative process, including through the following notices:

>   (a)  the FERC issued a Notice of Intent to Prepare an Environmental
>        Impact Statement for the Planned PennEast Project, Request for
>        Comments on Environmental Issues, and Notice of Public Scoping
>        Meetings on January 13, 2015, which was published in the Federal

Register and mailed to interested parties including federal, state, and local officials, agency representatives, environmental and public interest groups, Native American tribes, local libraries and newspapers, and affected property owners (i.e., landowners crossed or adjacent to the pipeline facilities or within 0.5 miles of a compressor station), and other stakeholders who had indicated an interest in the Project;

(b) PennEast filed an Application for Certificate of Public Convenience and Necessity and Related Authorizations, and FERC issued notice of PennEast's application on October 15, 2015;

(c) FERC published a Draft Environmental Impact Statement ("EIS") on July 22, 2016 and invited public comments on the Draft EIS; and

(d) FERC issued a Notice announcing the availability of the final EIS on April 7, 2017, which was published in the Federal Register on April 14, 2017 and mailed to interested parties and stakeholders.

(*Id.* at ¶ 14.)

The FERC also invited the public to participate in scoping meetings for the Project and reviewed and considered hundreds of public comments received from interested parties, including federal, state, and local governmental agencies, elected officials, environmental and public interest groups, and potentially affected landowners before issuing its FERC Order. (*Id.* at ¶ 15.) The FERC completed its extensive assessment and, in an order dated January 19, 2018, concluded that there is a need for the PennEast Project and that the Project will serve the public interest. (*Id.* at ¶ 17; England Decl. ¶ 6.)

Specifically, the FERC concluded that "[b]ased on the benefits the project will provide to the shippers, the lack of adverse effects on existing customers, other pipelines and their captive customers, and effects on landowners and surrounding communities, we

find, consistent with the Certificate Policy Statement[1] and section 7 of the NGA, that the public convenience and necessity requires approval of PennEast's proposal, subject to the conditions discussed [in the FERC Order]." (*See* Compl. Ex. B at ¶ 40.) On May 30, 2018, the FERC issued an order denying requests for rehearing for the limited purpose of further consideration (the "Tolling Order") and denying requests for rescission of the Tolling Order.

The Rights of Way are located on the Properties identified in each Complaint and are necessary to construct, install, operate, and maintain the pipeline facilities approved in the FERC Order (*Id.* at ¶ 2 (e), (f), 19; *see also* England Decl. at ¶ 8.) The Properties identified in each Complaint are located within the corridor approved for the construction, operation, and maintenance of the PennEast pipeline by the FERC Order, based upon alignment sheets that were reviewed and approved by the FERC. (England Decl. at ¶ 7.) The FERC reviewed and approved these Rights of Way prior to issuing the FERC Order. (Compl. at ¶ 21.) Before issuing the Order, the FERC reviewed extensive information and specifically considered the impact on Landowners and communities that might be affected by the Project, concluded that PennEast has taken steps to minimize adverse impacts on landowners and communities, and determined that the Project should move forward. (*Id.* at ¶ 22.)

PennEast retained Western Land Service ("WLS") to facilitate acquisition of the Rights of Way needed for the PennEast Pipeline Project. (Allison Decl. at ¶ 4.) Over a period of more than three years, WLS Land Agents communicated with Landowners multiple times to discuss PennEast's desire to access the Property to conduct surveys and

---

[1] *See* Certificate of New Interstate Natural Gas Pipeline Facilities, 88 FERC ¶ 61,227 (1999), clarified, 90 FERC ¶ 61,128 (2000), further clarified, 92 FERC ¶ 61,094 (2000).

other activities, as well as to discuss PennEast's plan to acquire the Rights of Way necessary for the Project. (Allison Decl. at ¶¶ 8, 13, 16.) Over the course of that time, the Land Agents documented each contact with Landowners immediately after the contact was made. (*Id.* at ¶ 14.) Records show that WLS had contact with or attempted contact with the Landowners numerous times to discuss PennEast's plans to acquire an easement over the Landowners' Property for the PennEast Project. (*Id.* at ¶ 16.) Despite PennEast's efforts to acquire the Rights of Way by agreement with the Landowners, PennEast has been unable to do so. (Allison Decl. at ¶ 17.)

PennEast made its most recent offer to acquire the Rights of Way, which exceeded $3,000.00, on or about January 20, 2018. (*Id.* at ¶ 18.) The Landowners have not accepted PennEast's offer. (*Id.* at ¶ 19.) PennEast has been unable to acquire by contract, and unable to agree with the Landowners concerning the compensation to be paid for the necessary Rights of Way to construct, operate, and maintain the PennEast Project. (*Id.* at ¶ 20.)

Construction timing is critical, and construction delays will result in lost contracts, the inability to comply with FERC requirements, and substantial financial losses that cannot be recouped. (England Decl. at ¶¶ 12-13.). 26. The FERC Order requires that construction be completed, and the Project be in service within two years from the date of the Order. (*See* Compl. Ex. B.)

## IV.    DISCUSSION

The Natural Gas Act permits the holder of a certificate of public convenience and necessity issued by the FERC to use eminent domain to acquire rights of way necessary to construct, operate and maintain a project as approved by the FERC Order. 15 U.S.C. §

717f(h). Courts have held that the NGA authorizes a party to exercise the federal power of eminent domain if it meets the three-prong test set forth in the statute:

1) The party must hold a FERC Certificate of Public Convenience and Necessity;

2) The party has not been able to acquire the property rights required to construct, operate and maintain a FERC-approved pipeline by agreement with the landowners; and

3) The value of the property sought to be condemned is more than $3,000.

*Columbia Gas Transmission, LLC v. 1.01 Acres*, 768 F.3d 300, 304 (3d Cir. 2014); *Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres*, 2008 WL 4346405, at *12-*13 (W.D. Pa. Sept. 19, 2008); *Alliance Pipeline L.P. v. 4.360 Acres of Land*, 746 F.3d 362, 364 (8th Cir. 2014); *Millennium Pipeline Co., L.L.C. v. Certain Permanent and Temporary Easements*, 777 F.Supp.2d 475, 479 (W.D. N.Y. 2011); *aff'd* 552 F.App'x 37 (2d Cir. 2014).

In the above matters, there is no dispute, and therefore no genuine issue of material fact that PennEast holds a FERC Certificate of Public Convenience and Necessity, that it has been unable to acquire the property rights in question to construct, operate and maintain the FERC-approved pipeline by agreement with the landowners, and that the value of the properties in question is greater than $3,000. None of the Landowners or Interest holders argue that PennEast has not met the three-pronged test set forth in the Natural Gas Act allowing it to use eminent domain. However, the Landowners oppose the entry of partial summary judgment in this matter and present several arguments in opposition to PennEast's exercise of eminent domain. Specifically, Landowners Snyder and Buskirk argue that PennEast failed to comply with Federal Rule

Civil Procedure 71.1 as it has failed to deposit just compensation and failed to properly value their properties. They also argue that PennEast has failed to comply with all provisions of the FERC Order, and Snyder argues that PennEast has failed to comply with Fed.R.Civ.P. 71.1 because it has failed to adequately identify her property to be condemned.

As to the remaining Landowners and Interest holders, they argue that the Project does not satisfy the "public use" requirement, the size and location of the taking is unreasonable, PennEast has not negotiated in good faith, and the proposed pipeline does not follow the least intrusive route. In addition, the City of Easton argues that a taking of its property in question violates the Prior Public Use Doctrine because the property is already being used as a public park. Interest holders Northampton County and Williams Township, as well as the Heindel Landowners and the Heindel Trust, also argue that their property is subject to a pre-existing conservation easement and permitting condemnation of a portion of that easement would defeat the purpose of the easement. As discussed below, I find all these arguments to be unpersuasive. Neither Landowners nor Interest holders can establish any genuine issue of material fact as to the three conditions set forth in the Natural Gas Act that must be met prior to the exercise of eminent domain by PennEast; therefore, PennEast is entitled to the entry of partial summary judgment in this matter.

## A. FEDERAL RULE OF CIVIL PROCEDURE 71.1

None of the landowners dispute the fact that PennEast has a FERC certificate, has been unable to acquire the rights of way that it needs to construct its pipeline, and that the value of the property in question is over $3,000. Rather, Snyder and Buskirk argue

that PennEast has failed to comply with Federal Rule of Civil Procedure 71.1.

Specifically, these landowners argue that PennEast failed to comply with Fed.R.Civ.P.

71.1(j)(1) which requires a plaintiff to deposit with the court any money required by law

as a condition to the exercise of eminent domain. Further, Snyder argues that PennEast

has failed to provide a description of the property to be acquired in violation of

Fed.R.Civ.P. 71.1(c)(2)(C) and (D). Both of these arguments fail.

First, as to the argument that PennEast has failed to pay adequate security, Rule

71.1(j)(1) states that a "plaintiff must deposit with the court any money required by law

as a condition to the exercise of eminent domain." However, the Rule does not require

PennEast to deposit money into the court **before** a condemnation of the landowners'

properties is authorized, nor do the landowners cite to a case that supports this contention.

To the contrary, once this Court determines that PennEast is authorized to exercise

eminent domain, PennEast will then be required to deposit security in an amount set by

the Court.

Snyder and Buskirk also take issue with PennEast's method of valuing the

properties. Specifically, the Landowners disagree with PennEast's use of the fair market

value of the rights of way to determine their appraised value. However, this argument is

inappropriate at this time, as the only issue currently before the Court is whether

PennEast should be permitted to exercise eminent domain powers under the Natural Gas

Act. Any issue of valuation of the properties will be addressed at a later stage of these

proceedings.

As part of her argument that PennEast failed to comply with Fed.R.Civ.P. 71.1,

Snyder also argues that PennEast failed to provide an adequate description of the

property to be acquired. Federal Rule of Civil Procedure 71.1(c)(2)(C) and (D) requires PennEast to provide "a description sufficient to identify the property; [and] . . . the interests to be acquired." Snyder claims that the description of the property contained in PennEast's Complaint is deficient because it lacks a metes and bounds description of the parcels at issue, uses outdated photographs to identify the property, and does not attach a surveyed plot plan showing the property to be condemned. Snyder further argues that PennEast's plans lack any description of distances in width or length of the easements sought and the acreage is approximated.

"It is well established that a condemnation action under the NGA requires no more than a description of the tract of land through which the pipeline will run and a plat showing the location of the easement, both of which are sufficient for identification." *In re Algonquin Nat. Gas Pipeline Eminent Domain Cases*, 2015 WL 10793423, at *8 (S.D.N.Y. Sept. 18, 2015) (*citing* Fed.R.Civ.P. 71.1(c)(2)(C)-(D); *East Tenn. Natural Gas Co. v. Sage,* 361 F.3d 808, 830 (4th Cir. 2004)). Further, courts have found that a condemning party is not "required to conduct a full survey with a metes and bounds description and plat drawn by a registered land surveyor showing the property to be taken," *Sabal Trail Transmission, LLC v. 7.72 Acres in Lee Cty., Alabama*, 2016 WL 3450827, at *3 (M.D. Ala. June 20, 2016), nor is there a requirement to describe the easement in sufficient detail to allow it to be recorded in local land records. *Columbia Gas*, 2014 WL 2960836, at *6-7.

Rather, all Rule 71.1 requires is a "short and plain statement" of the interest to be acquired. Fed.R.Civ.P. 71.1(c)(2)(C)-(D). PennEast identified Snyder's properties by tax parcel number and specifically identified the permanent and temporary right of way

acreage with plat maps showing the locations of the easements. *See* Compl., Ex. A. This information is sufficient to satisfy the short and plain statement requirement of Rule 71.1, and therefore, Snyder's argument must fail.

### B. Failure to Comply with the Conditional FERC Order

Several landowners argue that because the FERC order for the Project incorporated many conditions, some of which have not yet been met, PennEast is not permitted to exercise eminent domain. However, the NGA does not contain a requirement that the holder of a FERC certificate satisfy **all** conditions of said certificate prior to the exercise of eminent domain.

The FERC Order provides, *inter alia*, "we grant the requested authorizations, subject to the conditions discussed herein." (Compl, Ex. B, p. 1, ¶ 2.) Landowners argue that this language should be interpreted to mean that PennEast must obtain all environmental and other approvals prior to condemning any rights of way. However, this contention is incorrect. Multiple courts in this jurisdiction and elsewhere have held that a FERC order that contains conditions that must be met before pipeline construction can commence does not prohibit the exercise of eminent domain, nor does the situation where a pipeline has yet to obtain the necessary permits. *See Transcontinental Gas Pipe Line Co., LLC v. Permanent Easement for 2.14 Acres*, 2017 WL 3624250, at *6 (E.D. Pa. Aug. 23, 2017), *aff'd sub nom, Transcon. Gas Pipe Line, LLC v. Permanent Easements for 2.14 & Temp. Easements for 3.59 Acres in Conestoga Twp., Lancaster Cty., Pennsylvania*, 907 F.3d 725 (3d Cir. 2018); *Constitution Pipeline Co., LLC v. A Permanent Easement for 0.67 Acres & Temp. Easement for 0.68 Acres in Summit, Schoharie Cty., N.Y.*, 2015 WL 1638477, at * 2 (N.D.N.Y. Feb. 21, 2015) (rejecting

argument that pipeline company could not exercise eminent domain until it had obtained certain permits required prior to construction as conditions of the certificate order because the FERC had not expressly made such permits a condition to exercising eminent domain); *PennEast Pipeline Co., supra*, 2018 WL 6304192, at *7-9 (finding that approvals are not necessary for an order that PennEast has the authority to condemn); *Columbia Gas Transmission, LLC v. 370.393 Acres*, 2014 WL 5092880, at *4 (D. Md. Oct. 9, 2014) (rejecting argument that pipeline company had failed to comply with certain conditions listed in the FERC certificate and finding that claims that a company is not in compliance with the FERC certificate must be brought to the FERC, not the court); *Portland Natural Gas Transmission Sys. v. 4.83 Acres*, 26 F.Supp.2d 332, 336 (D.N.H. 1998) ("Compliance with FERC conditions cannot be used as a defense to the right of eminent domain and cannot be cited to divest the court of the authority to grant immediate entry and possession to the holder of a FERC certificate); *Tenn. Gas Pipeline Co. v. 104 Acres of Land*, 749 F.Supp. 427, 433 (D.R.I. 1990) (holding that "requirements in the FERC order arise after ownership of the rights of way are obtained and do not operate as a shield against the exercise of eminent domain power"). Further, in a New Jersey case involving PennEast and the very same pipeline at issue in the instant matters, The Honorable Brian R. Martinotti found that the conditions attached by the FERC to PennEast's Certificate of Public Convenience and Necessity did not undermine the finality of the Certificate under 717f(e) and permitted PennEast to exercise eminent domain power. *In Re PennEast Pipeline Company, LLC*, 2018 WL 6584893, at * 18 (D.N.J. Dec. 14, 2018).

The FERC certificate in question does, in fact, contain prerequisite conditions, some of which remain unmet at this time. However, there is no authority to support the Landowners' proposition that PennEast's exercise of eminent domain is prohibited until such time as the conditions in the FERC certificate are met. Absent any such caselaw or precedent to support this position, I will not order such an extreme outcome and cause undue delay. It is true that there are conditions in the FERC Certificate that PennEast will need to meet prior to commencing actual construction of the pipeline, but the fulfillment of these conditions is not a prerequisite to the exercise of eminent domain.

### C. Alleged Due Process Violations

Next, the Landowners and Interest holders argue that due process violations exist because no Court has yet heard their objections and defenses to PennEast's proposed taking of their properties. Specifically, these individuals take issue with the FERC determination that these takings are for a public purpose, with the reasonableness of the size and location of the proposed rights-of-way, whether the proposed rights-of-way are the least intrusive route through their properties, and whether PennEast conducted itself and its negotiations in good faith. The Landowners argue that unless these issues are addressed by a court, they will be deprived of their due process rights.

These claims of alleged due process violations are actually attacks on the FERC order itself, disguised as constitutional claims. It is widely accepted that the validity of a FERC Order can only be challenged in front of the FERC, and then in the United States Court of Appeals for the District of Columbia Circuit. It is important that this precedent be followed so large pipeline projects cannot be challenged in many forums, and a sole final arbiter can be established for the decisions. In *Tennessee Gas Pipeline Co. v. 104*

*Acres of Land More or Less,* 749 F.Supp. 427 (D.R.I. 1990), the court set forth the

limitations of a federal district court in reviewing FERC Certificates of Public

Convenience and Necessity pursuant to the Natural Gas Act. It stated:

> United States District Courts have a limited scope of review under Section
> 7(h) of the Natural Gas Act. Disputes over the reasons and procedure for
> issuing certificates of public convenience and necessity must be brought to
> the Federal Energy Regulatory Commission for hearing. 15 U.S.C. §
> 717f(b). The District Court's role is to evaluate the scope of the certificate
> and to order condemnation of property as authorized in the
> certificate. *See Williams Natural Gas Co. v. Oklahoma City,* 890 F.2d 255,
> 262 (10th Cir.1989)("Judicial review ... is exclusive in the courts of
> appeals once the FERC certificate issues."), *cert. denied,* 497 U.S. 1003,
> 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990); *Transcontinental Gas Pipe Line
> Corp. v. 118 Acres of Land,* 745 F.Supp. 366 (E.D.La.1990)("review of
> FERC orders are to be made only to United States Circuit Courts of
> Appeal"). District Courts, therefore, are limited to jurisdiction to order
> condemnation of property in accord with a facially valid certificate.
> Questions of the propriety or validity of the certificate must first be
> brought to the Commission upon an application for rehearing and the
> Commissioner's action thereafter may be reviewed by a United States
> Court of Appeals.

*Id.* at 430. *See also Steckman Ridge GP, LLC v. An Exclusive Nat. Gas Storage Easement

Beneath 11.078 Acres*, 2008 WL 4346405, at *4 (W.D. Pa. Sept. 19, 2008) ("Under the

statutory framework, there is no appeal of a FERC decision save to the appropriate Court

of Appeals. Disputes as to the propriety of FERC's proceedings, findings, orders, or

reasoning must be brought to FERC by way of request for rehearing. Appeals may

thereafter be brought before a U.S. Court of Appeals only.") Any challenge to the

substance and/or validity of the FERC order belongs in front of FERC. "The district

court's function under the statute is not appellate, but rather, to provide for enforcement."

*Sabal Trail Transmission, LLC v. +/- 0.14 Acres of Land*, 2016 WL 3189010 at *2 (M.D.

Fl. June 8, 2016).

Clearly, abundant case law holds that the jurisdiction of this court in this type of proceeding is to order condemnation only. The Landowners and Interest holders have failed to cite any case that supports their proposition that this Court has jurisdiction to independently address the validity or constitutionality of the FERC order. Therefore, this Court lacks the jurisdiction to address any sort of attack on the FERC order itself, constitutional or otherwise.

Further, the specific collateral attack that is presented here, i.e., that the FERC order does not serve a public purpose, has been rejected by other courts. *See Constitution Pipeline Co., LLC v. A Permanent Easement for 1.52 Acres*, 2015 WL 12556149, at *3 (N.D.N.Y. Feb. 26, 2015) ("[D]efendants argue that the FERC Order does not support a public purpose…plaintiff correctly points out that once a FERC certificate is issued, judicial review of the FERC certificate itself is only available in the circuit court."). To the extent the Landowners and Interest holders are arguing that the process by which FERC granted the certificate is deficient, that type of attack has also been rejected. *See Tenn. Gas Pipeline Co. v. 104 Acres of Land*, 749 F.Supp. at 430 (finding that disputes over the procedures for issuing certificates of public convenience and necessity must be brought to the FERC for rehearing, and thereafter to a federal court of appeals).

Landowners and Interest holders also argue that the size and location of the taking is unreasonable and that the route taken is not the least intrusive route. These arguments also must fail, as they too are improper collateral attacks on the FERC order itself.[2]

---

[2] Landowners also state that PennEast has not fulfilled its obligation to negotiate in good faith. However, no party actually argues this issue in their brief. The most discussion that can be found regarding this issue is a fleeting statement that there is a factual question as to the "actions of the Plaintiff during the negotiation period," but no further argument. Clearly, this type of unsupported factual allegation is insufficient to defeat PennEast's motion for summary judgment.

Furthermore, the Landowners clearly received adequate due process in front of the FERC. It is undisputed that the FERC conducted a thorough review process regarding this pipeline that lasted for years and involved extensive public participation, including thousands of pages of written submittals from the public. The FERC held a pre-deprivation hearing and the interested parties requested a rehearing, which was denied pursuant to the FERC tolling order. Part of the FERC's review process included reviewing several alternative routes, and the environmental impact of each, and allowed for a period of public comment. After this review and public comment, the FERC found the route in question to be in the public interest. Clearly, the FERC addressed and reviewed the landowners' concerns regarding the intrusiveness, and the size and location of the route during this review. If there were problems, issues, violations, or inadequacies in the FERC Order, the proper procedure would be to appeal the order itself to the United States Court of Appeals for the D.C. Circuit. Accordingly, adequate due process was provided to the Landowners and Interest holders in this matter.

### D.  Conservation Easement/Prior Public Use Doctrine

In case numbers 18-510, 18-527 and 18-530, the property which PennEast seeks to condemn is subject to county and/or township conservation easements and restrictive covenants. Accordingly, Northampton County, the record owner of the relevant conservation easements, Williams Township, the holder of additional conservation easements, and the Heindels and the Heindel Trust, owners of properties that are encumbered by the Northampton County and Williams Township conservations easements, object to PennEast's condemnation of the relevant rights of way. Further, in case number 18-524, the City of Easton has objected to PennEast's exercise of eminent

domain as the owner of a recreational tract of land that is currently used as a park over which PennEast seeks to gain an easement. These parties object to the proposed taking based upon the fact that the taking would conflict with the conservation easements and based upon the Prior Public Use Doctrine.

The conservation easement at issue in 18-510 is found in a "Deed of Agricultural Easement" dated December 31, 1997. Compl., Ex. D. This easement prohibits all industrial and commercial activities in the easement area, and states that the property is to be used solely for commercial purpose for stocks, livestock and livestock products. *Id.* The conservation easement at issue in 18-527 is found in a "Deed of Conservation Easement and Declaration of Restrictive Covenants" dated November 10, 2010, and the conservation easement at issue in 18-530 is found in a "Deed of Conservation Easement and Declaration of Restrictive Covenants" dated December 14, 2009. Compl., Exs. C and E. Paragraph 4 of both of these documents states that all industrial or commercial activities are prohibited in the area, including excavation or removal of rocks, minerals, gravel, topsoil or other similar materials. *Id.* In addition, Williams Township is the holder of a conservation easement on lands located at Hexenkopf Road in Williams Township, Northampton County, Pennsylvania.

In opposing PennEast's exercise of eminent domain, these easement holders first argue that the condemnation of the properties at issue would defeat the purposes of the easements themselves. As discussed above, this is a collateral attack on the FERC Order that this Court lacks the jurisdiction to address. Further, a review of the FERC Order shows that these easements were clearly taken into consideration by the FERC in issuing the Certificate to PennEast. Specifically, the FERC Order stated:

> Several comments were received discussing potential impacts on protected
> lands, including conservancies and lands held in trust. In addition, the
> EPA recommends that additional measures be taken to monitor whether
> protected land impacted by new easements lose quality and value to
> conservancy patrons. Impacts on conservation easements are addressed
> fully in section 4.7.2 of the final EIS. There are no changes expected in the
> conservation status of public lands crossed by the project, including state
> game lands and state highways and maintenance areas. No changes are
> expected in the conservation status of private lands crossed by the project
> in Pennsylvania. . .

Compl, Ex. B, p. 58, ¶ 158. Accordingly, even if this court had jurisdiction to address this

argument, I would find it to be unsuccessful. FERC took the conservation easements and

their purposes into consideration and took steps in the Order and the final Environmental

Impact Statement to address them. Additionally, there appears to be no factual reason

why the pipeline could not go under lands that are restricted due to a conservation

easement. Accordingly, this argument must fail.

In addition, the City of Easton argues that the condemnation of its property would

be a "clear violation of the Prior Public Use Doctrine, since [it is] already being used for

the benefit of the public." ECF No. 20, p. 7. However, the Prior Public Use Doctrine does

not apply to this matter.

First, the only cases cited by the City in support of this doctrine are from New

York and New Mexico. The City cites to no Pennsylvania state or federal law, nor have I

located any, that applies or discusses the prior public use doctrine.

Secondly, the Natural Gas Act, which gives PennEast the power of eminent

domain, is a federal law which preempts virtually any state law that might apply.

"Congress intended to occupy the field to the exclusion of state law by establishing

through the NGA a comprehensive scheme of federal regulation of all wholesales of

natural gas in interstate commerce." *Dominion Transmission, Inc. v. Summers,* 723 F.3d

238, 243 (D.C.Cir.2013) (internal quotation marks omitted). "[S]tate and local regulation is preempted by the NGA to the extent they conflict with federal regulation or would delay the construction and operation of facilities approved by" FERC. *Id.* at 245 (*citing Dominion Transmission,* 141 F.E.R.C. at 62, 298.) Accordingly, to the extent the Prior Public Use Doctrine may apply in this instance, it is preempted by the Natural Gas Act and the City's argument must fail.[3]

## V.  <u>CONCLUSION</u>

For all of the reasons set forth above, PennEast meets the test set forth by the Natural Gas Act to exercise the federal power of eminent domain. Landowners and Interest holders have failed to present a genuine issue of material fact as to PennEast's right to condemn. Accordingly, PennEast's Motions for Partial Summary Judgment are granted. Appropriate orders will follow.

---

[3] I am aware of the recent decision of the United States Court of Appeals for the Third Circuit regarding this same PennEast pipeline which  held that the sovereign immunity enjoyed by the States pursuant to the Eleventh Amendment bars PennEast's condemnation suits as to 42 specific properties in New Jersey that are owned, at least in part, by the State of New Jersey or various arms of the State. *In re: PennEast Pipeline Company, LLC,* ___ F.3d ___, 2019 WL 4265190 (3d Cir Sept. 10, 2019). However, the instant matter is easily distinguishable from those cases addressed by the Third Circuit because none of the properties that PennEast seeks to condemn here in the Eastern District of Pennsylvania are owned by the Commonwealth of Pennsylvania.